UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re CISCO SYSTEMS, INC. SECURITIES LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

No. $\bigcirc5-10261 \cdot RWZ\ mBD$

CLASS ACTION

PENSION FUND PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF
DOCUMENTS PURSUANT TO SUBPOENA
BY THIRD PARTY MASSACHUSETTS
FINANCIAL SERVICES INVESTMENT
MANAGEMENT

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................................. 2

        A.      Brief Overview of Plaintiffs' Claims ...................................................................... 2

        B.      Procedural History .................................................................................................. 3

III.    ARGUMENT .................................................................................................................. 5

        A.      Legal Standard ........................................................................................................ 5

        B.      The Withheld Documents Are Evidence of Percipient Information and
                Should Be Produced ................................................................................................ 6

IV.     CONCLUSION ............................................................................................................. 10

## I.      INTRODUCTION

This is a class action currently pending in the Northern District of California against Cisco Systems, Inc. ("Cisco" or the "Company") and certain of its officers and directors[1] by plaintiffs Plumbers and Pipefitters National Pension Fund, Central States, Southeast and Southwest Areas Pension Fund, Carpenters Pension Fund of Illinois, and Alexander Nehring (collectively "Pension Fund Plaintiffs") for violation of the federal securities laws. This motion seeks to compel the production of notes taken during presentations and interviews with several of the Individual Defendants and others by Mr. David Sette-Ducati, an analyst employed at the time by Massachusetts Financial Services Investment Management ("MFS"), one of Cisco's largest investors. Mr. Sette-Ducati's deposition testimony makes clear that the notes, reports, e-mail and other documents reflect his contemporaneous thoughts and analysis of Cisco's true financial condition five years ago. These documents were withheld from production, and the witness was directed by his counsel not to answer questions concerning them.

MFS resists production of the notes and other responsive documents on the basis that they constitute expert opinion protected by Federal Rule of Civil Procedure 45(c)(3)(B)(ii) (the "Rule"). The Rule provides, in relevant part, that a subpoena may be quashed if it "requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party." Thus on its face, the Rule does not apply: the withheld documents describe specific events and occurrences in dispute, and Mr. Sette-Ducati's notes and reports were not made at the request of any party.

_____

[1]      The individually-named defendant directors and officers are John T. Chambers, Larry R. Carter, Gary J. Daichendt, Carl Redfield, Donald J. Listwin, Donald T. Valentine, Edward R. Kozel, Michelangelo Volpi, Judith L. Estrin, Carol A. Bartz, Steven M. West, and Robert L. Puette (the "Individual Defendants").

- 1 -

The withheld documents clearly go the heart of plaintiffs' claims, reflecting knowledge of senior and lower management of Cisco's true financial condition during the Class Period (August 10, 1999 – February 6, 2001). According to the witness, the notes reflect what occurred at meetings and presentations with Cisco. To the extent the withheld documents reflect Mr. Sette-Ducati's analysis, plaintiffs are not asking Mr. Sette-Ducati to form a new opinion, but merely to provide evidence already collected and in his counsel's possession, and to testify as to the opinions he formed over five years ago based on his unique access to the defendants and others. Indeed, the Advisory Committee Notes to the 1991 Amendment of the Rule cite with approval the case of *Wright v. Jeep Corp.*, 547 F. Supp. 871 (E.D. Mich. 1982), in which a researcher resisting discovery was ordered to produce his notes.

Moreover, as set forth in more detail below, MFS's counsel in fact produced many documents which reflect Mr. Sette-Ducati's analysis and thought process. Counsel should not be able to shield relevant documents from discovery through the inconsistent assertion of a purported privilege. Plaintiffs respectfully ask this Court to order the production of all documents withheld on these grounds, and to allow Mr. Sette-Ducati to be deposed on matters relating to the withheld documents.

## II.    STATEMENT OF FACTS

### A.    Brief Overview of Plaintiffs' Claims

The Complaint[2] claims that Cisco and the Individual Defendants violated the securities laws of the United States by issuing false and misleading statements regarding Cisco's financial

---

[2]    "Complaint" or "FAC" refers to the First Amended Consolidated Complaint for Violation of the Federal Securities Laws, relevant excerpts of which are attached as Exhibit 1 to the Affidavit of Lesley E. Weaver in Support of Pension Fund Plaintiffs' Motion to Compel Production of Documents Pursuant to Subpoena by Third Party Massachusetts Financial Services Investment Management ("Weaver Aff."), filed concurrently herewith.

performance during the Class Period. ¶1.[3]  Specifically, defendants improperly manipulated their financial results in order to beat analysts' earnings estimates by "one penny" for 16 consecutive fiscal quarters. *Id.* One method of manipulation was through closing quarters "early" to enable Cisco to beat the consensus Wall Street EPS forecast for that quarter by $0.01, thus carrying revenue over into, and inflating, the next quarter's results. ¶60. The Individual Defendants – half of whom were on Cisco's Board of Directors – engaged in a massive sell-off of their own stock (over $600 million) in order to beat the drop. ¶37. The Class Period ended after Cisco was forced to disclose hundreds of millions of dollars of charges relating to improper revenue recognition.

## B. Procedural History

Plaintiffs' claims were upheld by the Honorable James Ware on April 23, 2003. Defendants began producing documents in August 2003, and the fact discovery cut-off is set for September 30, 2005. An extension of the cut-off is extremely unlikely.

In the course of discovery, plaintiffs learned that MFS and its analyst, David Sette-Ducati, followed Cisco stock and interviewed certain Individual Defendants and employees of the Company during the Class Period. Plaintiffs served a subpoena *duces tecum* on MFS on April 12, 2005, seeking documents, testimony and communications regarding the statements made to MFS and Mr. Sette-Ducati by defendants. Weaver Aff., Ex. 2.

On April 27, 2005, MFS responded to the subpoena, objecting in boilerplate fashion to all of plaintiffs' requests, and asserting a purported privilege under Federal Rule of Civil Procedure 45(c)(3)(B)(ii) for MFS's "confidential research, work product and/or financial recommendations or conclusions." *See id.*, Ex. 3 at 4. On April 29, 2005, plaintiffs' counsel met and conferred by telephone with counsel for MFS to informally resolve MFS's objections and determine which

---

[3]     All "¶__" references are to the FAC.

- 3 -

documents MFS intended to produce. *See id.*, Ex. 4. During the telephonic conference, plaintiffs agreed to limit the scope of the subpoena, and to allow MFS to produce documents on a rolling basis. MFS agreed to produce responsive documents, and stated in that meet and confer that it was unclear if MFS would stand on its "privilege objection." *See id.* MFS promised to produce documents no later than two weeks from May 9, 2005. *Id.*, Ex. 5.

On Friday, June 10, 2005, only one week before the deposition of Mr. Sette-Ducati and well after its promised production date, MFS finally produced documents responsive to the subpoena. Among those documents were handwritten notes by Mr. Sette-Ducati which contained redactions and no redaction log. *See id.*, Ex. 6. In response to plaintiffs' inquiry, counsel for MFS represented that MFS had withheld and redacted documents on the basis of "analyst's expert work product." *See id.*, Ex. 7. MFS dismissed plaintiffs' arguments that such a privilege was limited to situations where the witness did not have personal, factual knowledge of the issues of the litigation, that the documents here no longer contained any proprietary value because the passage of time had rendered the information worthless, and that a protective order was in place to protect any legitimate privacy interests MFS may have. *Id.*

During the June 17, 2005 deposition of Mr. Sette-Ducati, MFS's counsel once again cited privilege as the reason MFS refused to produce any notes that MFS analysts took while interviewing Cisco management and employees during the Class Period. *Id.*, Ex. 8 at 87:16-88:1. However, the deponent's testimony was clear that the withheld and redacted notes reflected communications between MFS analysts and certain Individual Defendants, as well as lower-level employees. *Id.* at 50:12-18; 90:9-91:8 (Sette-Ducati shared written communications about his analysis of Cisco with Cisco employees to "test [his] assumptions"); 100:19-101:17; 162:7-163:11; 167:19-168:9 (analysis of whether Cisco was closing quarters early is contained in his reports); 186:19-188:7 (Sette-Ducati

- 4 -

attended lunch meeting with defendant CEO Chambers, but cannot recall without his notes).[4] MFS's counsel also occasionally impeded the oral examination of Mr. Sette-Ducati, citing the same privilege. *Id.* at 87:13-88:16, 188:16-189:14 (refusing to allow witness to testify regarding redacted material). At the same time, MFS produced documents which clearly reflect Mr. Sette-Ducati's opinion on certain matters. *See id.* at 143:13-144:3 (opining in an e-mail that most internet IPOs would lose 30%-50% of their value within 12 months); 203:10-17 (opining that Cisco did not have a competitive problem similar to Microsoft). It undermines the public policy that Rule 45(c)(3)(B)(ii) is intended to advance if MFS is permitted to apply it selectively.

## III.   ARGUMENT

### A.   Legal Standard

The scope of discovery is broad and encompasses any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A party may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). A party seeking enforcement of the subpoena need only show that the information sought is "reasonably calculated to lead to the discovery of admissible evidence." *ITT Electro-Optical Prods. Div. of ITT Corp. v. Elec. Tech. Corp.*, 161 F.R.D. 228, 231 (D. Mass. 1995) (granting motion to compel documents from a third party even though the documents contained "trade secrets" because enforcement of the subpoena was reasonable and the need for the information by the party outweighed any possible injury to the non-party).

---

[4]    Mr. Sette-Ducati was succeeded in his position as the MFS analyst following Cisco during the Class Period. Weaver Aff., Ex. 8 at 20:16-25. The withheld documents presumably also relate to her percipient knowledge, as well as other MFS analysts, based on their meetings with Cisco personnel. *See, e.g.*, *id.* at 224:12-24 (referring to a call between another analyst and Cisco CFO Carter).

**B.    The Withheld Documents Are Evidence of Percipient Information and Should Be Produced**

MFS does not dispute that the withheld and redacted documents are highly relevant to plaintiffs' claims and easily meet the standard of discoverable evidence. Nor could it. Plaintiffs seek percipient observations of witnesses who had unique access to several Individual Defendants as well as other members of senior management and multiple Company insiders regarding the true financial condition of Cisco during the Class Period. Weaver Aff., Ex. 8 at 114:25-115:11 (meeting with Company to discuss quarters closing early); 127:14-128:4 (meeting with the CEO's second-in-command); 129:22-25 (meeting with Sales Senior Vice President); 134:10-23 (meeting with the CFO and others). Mr. Sette-Ducati took notes of these meetings. *Id.* at 227:9-18; 229:10-20. Other memos and reports reflect the meetings and thoughts of MFS analysts who followed Cisco after Mr. Sette-Ducati changed positions. Mr. Sette-Ducati also e-mailed with Cisco, including the CFO. *Id.* at 42:5-43:12. Such documents are the very definition of relevant.

Instead, MFS claims that Federal Rule of Civil Procedure 45(c)(3)(B)(ii) grants it immunity from discovery. MFS is wrong. Rule 45(c)(3)(B)(ii) states that a court may, in its discretion, quash or modify the subpoena of a non-retained expert unless the proponent makes a showing of "substantial need" that "cannot be otherwise met without undue hardship" and payment of reasonable compensation. Fed. R. Civ. P. 45(c)(3)(B)(ii), (iii).

This rule only applies, however, if the opinion or information "does not describe events or occurrences in dispute and results from the expert's study made not at the request of the party." *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 326 (D.D.C. 2003). That is, if the information was prepared in the past, it is discoverable. This distinction addresses any concern that a party might be conscripting an expert to perform expert analysis without compensation. The Rule was intended to address instances where parties were subpoenaing experts

- 6 -

with no percipient knowledge to avoid the costs of retaining an expert themselves. This is clearly not the case here, where the documents MFS is withholding have already been created and reflect a wealth of knowledge regarding Cisco's true financial condition during the Class Period.

Indeed, when "a party seeks only factual information relating to an issue in the case, a witness cannot demand any greater compensation than any other witness merely because he or she can claim some expertise in a discipline or calling." *Id.* at 327. Discovery of "purely factual information" does not comprise a witness's intellectual property, and is therefore not protected by Rule 45(c)(3)(B)(ii). *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 148 F.R.D. 552, 557 (S.D. W. Va. 1993).

The withheld documents will provide plaintiffs unique insight from percipient witnesses who interviewed certain of the Individual Defendants and other key Cisco employees during the Class Period. For example, Mr. Sette-Ducati testified that he met with Cisco's President and CEO John Chambers during the relevant period and discussed Cisco's financial condition. Weaver Aff., Ex. 8 at 45:11-46:12. Mr. Sette-Ducati also testified he recorded these interviews in his notes.

> Q. When you met with John Chambers, did you take notes?
>
> A. Yes.
>
> Q. And do you know what happened to those notes?
>
> A. No.
>
> Q. Do you currently possess them?
>
> A. Do I currently possess them? No, I gave all my notes over to you guys.
>
> Q. I wish that were true. But you collected those notes responsive to the subpoena, is that what you mean to say?
>
> A. Yes.
>
> Q. And that included notes of your meetings with John Chambers, is that right?

A. Again, I collected everything I had and provided it, what I had.

*Id.* at 49:25-50:15.

Similarly, Mr. Sette-Ducati testified that he met with other Cisco insiders, including Cisco

CFO Larry Carter, and took similar notes.

Q. With regard to all of the meetings with individuals that we've discussed
over the past half an hour or so, did you take notes during those meetings?

A. Yes.

Q. And those notes again would have been maintained in your files which
were then passed on to Kate [Mr. Sette-Ducati's successor in his analyst role at
MFS]; is that correct?

A. Yes, they should have been.

*Id.* at 62:16-24.

Plaintiffs seek the documents withheld from MFS's production for the purpose of

discovering what was said during interviews with Cisco insiders and certain Individual Defendants

regarding Cisco's financial condition. As these discussions served as the basis for evaluating the

value of holding Cisco stock, the notes go to the heart of plaintiffs' claims. Such discovery falls far

outside the scope of Rule 45(c)(3)(B)(ii). *See Bank Hapoalim, B.M. v. Am. Home Assurance Co.*,

No. 92 Civ. 3561(KMW), 1993 U.S. Dist. LEXIS 15349, at *5 (S.D.N.Y. Nov. 1, 1993) (holding

that a party seeking factual discovery from the "personal knowledge" of the witness regarding claims

"at the heart of this case" was not barred by Rule 45(c)(3)(B)(ii)).

Unlike the plaintiffs in *In re Subpoena Duces Tecum to Lehman Bros. Kuhn Loeb, Inc.*, No.

M8-85(SWK), 1983 U.S. Dist. LEXIS 11752 (S.D.N.Y. Nov. 14, 1983), the lone case cited by MFS

in support of its claim of privilege, plaintiffs here are not attempting to ascertain MFS's current

analysis of a public corporation. *Id.* at *2. In fact, the documents that plaintiffs seek are over five

years old, and are completely worthless to any current analysis of Cisco securities. MFS has

absolutely no proprietary interest in documents that have no present monetary value. The historical nature of the documents sought by plaintiffs, and the fact that the documents pertain directly to the factual disputes of this litigation, renders Rule 45(c)(3)(B)(ii) inapplicable. *See Brogren v. Pohlad*, No. 94 C 6301, 1994 U.S. Dist. LEXIS 16244, at *5-*6 (N.D. Ill. Nov. 14, 1994) (holding because the third party had already formed and expressed the opinion sought by the plaintiff, and because they had already been paid by others for the investment advice, disclosing the information sought "would not constitute a 'taking' of [the third party's] intellectual property, which is the central concern of Rule 45(c)(3)(B)(ii)").

Indeed, the arbitrary and unworkable nature of the distinction MFS's counsel seeks to draw here is manifested by counsel's inability to apply it. During Mr. Sette-Ducati's deposition, counsel permitted oral examination of the witness regarding his analysis, but withheld discussion of material redacted because it reflected his analysis. Weaver Aff., Ex. 8 at 190:23-191:20. For example, Exhibit No. 559 was a "memo that a group of us wrote to our investment department drawing some thoughts on our attendance at the Supercomm trade show in June 2000." *Id.* at 204:9-21 Among other things, the memo noted that the sell side analyst community had decided that the Monterey acquisition was a flop. *Id.* at 206:5-10. This clearly reflects Mr. Sette-Ducati's thoughts and impressions. However, other portions of this document were redacted, and Mr. Sette-Ducati was not permitted to testify about those. *Id.* at 204:22- 205:10. Similarly, portions of his handwritten notes reflecting his thoughts and impressions were produced in redacted form and out of order, such that examination of the witness was impeded. *Id.* at 235:1-10 (testifying that it would have helped the witness to have the entire notebook in determining what his writing referenced). This inconsistency springs from the obvious fact that it is impossible to parse Mr. Sette-Ducati's thoughts and

impressions from his expert analysis and his recollection as a percipient witness. The "privilege" MFS attempts to assert does not apply to these facts.

Finally, any confidentiality concerns that MFS may have in the withheld documents is protected by the Protective Order governing the litigation. *See id.*, Ex. 9; *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 578 (E.D. Pa. 1989) (holding a party's "legitimate privacy interests" in disclosing amounts of income was adequately protected by the protective order); *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (holding plaintiff's need for discovery outweighed any burden on defendant where defendant's privacy and attorney-client privilege would be protected by its counsel's review of all documents and a protective order was in place and that discovery would result in "minimal business interruption").

## IV. CONCLUSION

For the reasons detailed above plaintiffs' motion to compel should be granted.

## REQUEST FOR ORAL ARGUMENT

The Pension Fund Plaintiffs respectfully request oral argument on this matter.

## LOCAL RULE 37.1(B)

Pursuant to Federal Rule of Civil Procedure 37(a)(2)(B) and Local Civil Rule 37.1(b), and as set forth above, plaintiffs' counsel has thus attempted in good faith to resolve the disputed issues, but was ultimately unable to reach an agreement. Plaintiffs now seek relief from this Court.

DATED: July 5, 2005      Respectfully submitted,

KRAKOW & SOURIS, LLC
CHRISTOPHER N. SOURIS   BBO #556343

CHRISTOPHER N. SOURIS

- 10 -

225 Friend Street
Boston, MA 02114
Telephone: 617/723-8440
617/723-8443 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
SPENCER A. BURKHOLZ
DANIEL S. WEAVER
JONAH H. GOLDSTEIN
MATTHEW P. MONTGOMERY
LUCAS F. OLTS
JESSICA D. TALLY
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
LESLEY E. WEAVER
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SANDRA STEIN
1845 Walnut Street, 25th Floor
Philadelphia, PA 19103
Telephone: 215/988-9546
215/988-9885 (fax)

LEVIN, PAPANTONIO, THOMAS, MITCHELL,
  ECHSNER & PROCTOR, P.A.
FREDRIC G. LEVIN
J. MICHAEL PAPANTONIO
TIMOTHY M. O'BRIEN
316 South Baylen Street, Suite 600
Pensacola, FL 32501
Telephone: 850/435-7000
850/436-6084 (fax)

Co-Lead Counsel for Plaintiffs

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 401 B Street, Suite 1600, San Diego, California 92101.

2.     That on July 5, 2005, declarant served the PENSION FUND PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA BY THIRD PARTY MASSACHUSETTS FINANCIAL SERVICES INVESTMENT MANAGEMENT by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of July, 2005, at San Diego, California.

JUNE P. ITO

CISCO (FEDERAL-LEAD)
Service List - 7/1/2005    (201-110-1)
Page 1 of 2

## Counsel For Defendant(s)

Dean S. Kristy
Kevin P. Muck
Felix Lee
Fenwick & West LLP
275 Battery Street, Suite 1500
San Francisco, CA 94111
  415/875-2300
  415/281-1350 (Fax)

Norman J. Blears
Daniel T. Rockey
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025
  650/324-7000
  650/324-0638 (Fax)

Carol Lynn Thompson
Heller Ehrman LLP
333 Bush Street, Suite 3100
San Francisco, CA 94104-2878
  415/772-6000
  415/772-6268 (Fax)

Theodore P. Senger
PricewaterhouseCoopers LLP
333 Market Street
San Francisco, CA 94104
  415/498-5000
  415/498-7135 (Fax)

Dan K. Webb
Robert Y. Sperling
Robert L. Michels
Winston & Strawn LLP
35 West Wacker Drive, Suite 4200
Chicago, IL 60601-9703
  312/558-5600
  312/558-5700 (Fax)

## Counsel For Plaintiff(s)

J. Nixon Daniel, III
David L. McGee
Terri L. Didier
Beggs & Lane
501 Commendencia Street, P.O. Box 12950
Pensacola, FL 32591
  850/432-2451
  850/469-3330 (Fax)

Scot Bernstein
Law Office of Scot Bernstein
10510 Superfortress Avenue, Suite C
Mather Field, CA 95655
  916/447-0100
  916/933-5533 (Fax)

CISCO (FEDERAL-LEAD)

Service List - 7/1/2005    (201-110-1)

Page 2 of  2

Darren J. Robbins
Spencer A. Burkholz
Daniel S. Drosman
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA  92101-4297
    619/231-1058
    619/231-7423 (Fax)

Timothy M. O'Brien
Levin, Papantonio, Thomas, Mitchell, Echsner &
Proctor, P.A.
316 South Baylen St., Suite 600
Pensacola, FL  32501
    850/435-7000
    850/436-6084 (Fax)

Patrick J. Coughlin
Lesley E. Weaver
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
    415/288-4545
    415/288-4534 (Fax)

**Counsel for Massachusetts Financial Services
Investment Management**

Sharon Simpson Jones
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109
    617-526-6887
    617-526-5000 (fax)