UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In Re CISCO SYSTEMS, INC.<br>SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-10261-RWZ<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF THIRD PARTY MASSACHUSETTS FINANCIAL
SERVICES INVESTMENT MANAGEMENT IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF EXPERT WORK PRODUCT**

**I.    INTRODUCTION**

Massachusetts Financial Services Company ("MFS") is an investment adviser that is not a party to this litigation. MFS provides investment advice to a limited group of mutual funds and private clients pursuant to investment advisory contracts. As part of advising its clients about what securities to buy and sell, it employs experts – research analysts – who prepare internal reports about particular securities to which its employees who make investment decisions – portfolio managers – have access. This confidential expert work product is not made available to the public. It is core intellectual property that MFS prepares at great expense in order to guide the decisions for which its clients pay.

MFS research analysts – including David Sette-Ducati (the principal MFS analyst covering Cisco during this period) – did research and prepared reports for MFS concerning Cisco during the period as to which the plaintiffs have sued Cisco. Plaintiffs by subpoena have obtained from MFS 1,200 pages of documents and Mr. Sette-Ducati's deposition. As a result, they have obtained what MFS as a fact witness can provide. This includes testimony from Mr.

Sette-Ducati regarding what he recalls that Cisco's representatives said to him and others, and the portion of the available documents reflecting what those representatives said. All that has been withheld is information that the law does not permit plaintiffs to demand.

Federal Rule of Civil Procedure 45(c)(3)(B)(ii) prevents litigants from subpoenaing expert work product not prepared for a party to the case absent a showing of substantial need. Plaintiffs have made no such showing. They claim that MFS's opinion about the merits of an investment in Cisco is "highly relevant" to the question of materiality – an issue in their case. But relevance or "high" relevance is not the governing standard, and plaintiffs' failure to articulate the proper standard speaks volumes about the merits of their demand. "Substantial need" is the same test applicable to the qualified work product privilege set forth in Rule 26 and the qualified third party expert privilege set forth in Rule 45. No one would argue that there is substantial need for attorney work product because it is relevant to a plaintiff's case. Likewise, where it is abundantly clear that experts other than MFS and Mr. Sette-Ducati are available to opine on anything about which they could opine, there can be no argument that plaintiffs have a substantial need for MFS expert work product.

Plaintiffs have the facts reflected in MFS documents or resident in Mr. Sette-Ducati's memory. They can argue them to the jury, or retain their own expert. They don't need MFS or Mr. Sette-Ducati, and neither should be put to work for plaintiffs against their will. Accordingly, plaintiffs' motion to compel should be denied.

## II.  RELEVANT PROCEDURAL HISTORY

### A.  MFS Has Complied Fully With Its Obligations Under the Discovery Rules.

MFS received two subpoenas from plaintiffs: one seeking the production of documents and another seeking the deposition of Mr. Sette-Ducati. MFS objected to the document subpoena because, *inter alia*, it "may improperly seek the disclosure by MFS of what would be

its confidential research, development and commercial information, including notes and recommendations of its analyst, David Sette-Ducati, in contravention of Fed. R. Civ. P. 45(c)(3)(B)(ii)."[1] See Letter from William H. Paine dated April 27, 2005, attached to Affidavit of Sharon Simpson Jones ("Simpson Jones Aff.") at Ex. 1.

By letter dated May 9, 2005, MFS agreed to produce communications between Cisco and its research analysts assigned to Cisco, while preserving its objection to the production of expert work product. See Letter from Sharon Simpson Jones dated May 9, 2005, Simpson Jones Aff. at Ex. 2. On June 9, 2005, MFS produced approximately 1,200 pages of responsive documents for the time period May 1, 1999 to June 1, 2001. Consistent with MFS's stated objection, thirteen pages of the produced documents were redacted to remove notes that did not reflect communications with Cisco, but rather reflected the mental impressions of MFS's research analysts. An additional fourteen pages were redacted for notes relating to companies other than Cisco. MFS also stated in its June 9 cover letter that it was not producing its research notes. See Letter from Sharon Simpson Jones dated June 9, 2005, Simpson Jones Aff. at Ex 3. MFS objected that it would be overly burdensome to sift through the research notes and identify those portions which constituted communications, as opposed to analysts' expert work product.

Plaintiffs waited until just before Mr. Sette-Ducati's deposition to quarrel with the scope of discovery set forth in the objection. By e-mail sent after 9 p.m. on June 15, 2005, plaintiffs demanded that MFS produce all responsive documents by 3 p.m. the following day, or they would move to compel production and seek further testimony by Mr. Sette-Ducati. See Email from Lesley Weaver dated June 15, 2005, Simpson Jones Aff. at Ex. 4. MFS stood on its

---

[1] MFS employs a team of research analysts who are assigned to cover specific industries and companies. Based on their analysis of available information, they advise MFS's portfolio managers and recommend whether to purchase or sell specific securities. See www.mfs.com, "About MFS: A Disciplined Investment Process." Unlike "sell-side" analysts who produce reports for the investing public, MFS's "buy-side" analysts produce proprietary and confidential research notes and reports intended only for internal use by MFS's portfolio managers.

objection. See Letter from Sharon Simpson Jones dated June 16, 2005, Simpson Jones Aff. at Ex. 5.

Plaintiffs deposed Mr. Sette-Ducati for almost seven hours on June 17, 2005.[2] During his deposition, Mr. Sette-Ducati confirmed that he had provided all of his notes to counsel for review and production. He also testified in detail regarding his various communications with Cisco during the class period.[3]

On July 12, 2005, after receipt of the motion to compel, counsel for MFS conferred with plaintiffs' counsel in an attempt to resolve this dispute. MFS offered to waive its burdensomeness objection, review its research notes and produce those portions that reflected communications between Cisco and MFS's research analysts assigned to Cisco. At the time, counsel for plaintiffs agreed to pursue this procedure, while reserving their right to proceed with the motion to compel. Plaintiffs' counsel also indicated that they would agree to a short extension of time for MFS to file this opposition. However, on July 18, 2005, before receiving the production, plaintiffs informed MFS that any production short of "all responsive documents," including expert work product, would be unacceptable, and denied ever agreeing to an extension of time. See Letter from Lucas Olts dated July 18, 2005, Simpson Jones Aff. at Ex 7.

On July 20, 2005, having done the work to distinguish between information provided by Cisco and MFS's own work product, MFS produced an additional 42 pages containing those

---

[2] Plaintiffs' argument that MFS has waived its expert work product privilege by allowing Mr. Sette-Ducati to answer certain questions at his deposition should be rejected. At deposition, as plaintiffs concede, MFS allowed questions relating to communications with Cisco, but did not allow inquiry into the content of redacted expert work product. Plaintiffs' Memorandum at 5. MFS has consistently maintained the distinction between communications with Cisco, which have been produced, and MFS's internal analyses of Cisco, which have not.

[3] Plaintiffs contend that MFS has already produced portions of Mr. Sette-Ducati's expert work product. See Plaintiffs' Memorandum at 5. In fact, the documents were not confidential work product and were not produced by MFS. They were communications between Mr. Sette-Ducati and Cisco that Cisco produced to plaintiffs. Deposition of David Sette-Ducati at 140-143 (discussing Exhibit 440, an email document produced by Cisco bearing Bates Nos. CIS-PPNPF-0998567-68); id. at 202-03 (discussing Exhibit 558, an email document produced by Cisco bearing Bates No. CIS-PPNPF-0103336).

portions of MFS's research and related notes that discuss communications between Cisco and research analysts assigned to Cisco. See Letter from Sharon Simpson Jones dated July 20, 2005, Simpson Aff. at Ex. 8. This production includes many of the communications described and sought by plaintiffs' motion to compel. See, e.g., Plaintiffs' Memorandum at 6.

## III. ARGUMENT

### A. Fed. R. Civ. P. 45(c)(3)(B)(ii) Applies to MFS Analysts' Expert Work Product.

Rule 45(c)(3)(B)(ii) clearly applies to MFS's expert work product. See Rule 45(c)(3)(B)(ii) (limiting discovery that would require "disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party"). MFS and its research analysts have not been retained as experts in this litigation. It is also clear that MFS's analyses were not made at the request of either plaintiffs or Cisco, but rather for MFS's own internal use.

Moreover, the portions of MFS's expert work product that have been withheld (as opposed to the notes of communications that MFS has produced) do not describe specific events or occurrences in dispute. To the extent that MFS has knowledge of specific events or occurrences, it is limited to the communications with Cisco that MFS has produced or about which plaintiffs have taken a deposition. MFS's opinions regarding such communications do not constitute factual knowledge of specific events, but rather are the analytical work product of MFS's research analysts, prepared for the purpose of making buy or sell recommendations to MFS's fund and portfolio managers. These are precisely the types of materials which Rule 45(c)(3)(B)(ii) is intended to protect from discovery. See Schering Corp. v. Amgen Inc., No. Civ. A. 98-97 MMS, 1998 WL 552944 (D. Del. Aug. 4, 1998) (quashing subpoena to unretained experts whose opinions did "not describe specific events or occurrences in dispute").

**B. Plaintiffs Err in Asserting that Work Product Created "In the Past" is Not Protected by Rule 45(c)(3)(B)(ii).**

The case that plaintiffs cite for the proposition that "past" expert work product is not protected by Rule 45(c)(3)(B)(ii), Statutory Comm. of Unsecured Creditors v. Motorola, Inc., 218 F.R.D. 325 (D.D.C. 2003), holds precisely to the contrary. Compare Plaintiffs' Memorandum at 6 (citing Motorola and concluding "if the information was prepared in the past, it is discoverable") with Motorola, 218 F.R.D. at 327 (granting motion to quash third party subpoena seeking past work product). The Motorola court rejected plaintiffs' argument that the Rule "does not pertain to an expert unless the party is seeking to elicit her present opinion as to some matter in controversy." Id. at 326. As the court explained:

> . . . Motorola's distinction between a present opinion and a past opinion is unreasonable. Under that distinction, so long as [a] party does not elicit a present, existing opinion as to some matter, the party can compel any other opinion without compensation so long as it can establish that some other person relied upon it. . . As Motorola would have it, a party can demand for free the testimony of any Nobel Laureate in Economics if it can establish that a party relied upon the opinion the Laureate once held, even though not published, so long as the Laureate is not asked to give what Motorola would call a 'present opinion' as to some matter currently in dispute. This would eviscerate Rule 45(c)(3)(B)(ii) by denying its protection to all scholarship other than that which yields a 'present' opinion. Yet, pre-existing scholarship falls perfectly within Rule 45(c)(3)(B)(ii)'s protection of an 'unretained expert's opinion.'"

Id. at 327. See also Thompson v. Glenmede Trust Co., 1995 WL 752422 (E.D. Pa. Dec. 19, 1995) (rejecting contention that previously-formulated opinion of unretained expert is discoverable). Thus, contrary to plaintiffs' assertions, the passage of time has not deprived MFS of the protection of Rule 45(c)(3)(B)(ii).

Other cases cited by plaintiffs are no more persuasive. In Brogren v. Pohlad, No. 94 C 6301, 1994 WL 654917 at *2 (N.D. Ill. Nov. 14, 1994), the third party whose testimony and

documents were sought had waived its objections by failing to object. Additionally, unlike here, the materials sought had previously been provided to others. In <u>Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co. of Pennsylvania</u>, 148 F.R.D. 552, 557 (S.D. W. Va. 1993), the court found that the deposing party sought "primarily factual information," as opposed to opinion or "intellectual property." <u>Id</u>. Here, plaintiffs concede that they are seeking MFS's "assessment of the veracity or plausibility of Cisco's statements." <u>See</u> Letter from Lucas Olts dated July 15, 2005, Simpson Jones Aff. at Ex. 6. Such assessments necessarily constitute expert opinion, not fact.

In <u>Bank Hapoalim, B.M. v. American Home Assurance Co.</u>, 92 Civ. 3561 (KMW), 1993 U.S. Dist. LEXIS 15349 at *6, (S.D.N.Y. Nov. 1, 1993), also cited by plaintiffs, the court found that the third party was not an expert because the deposing party was "not concerned with his professional opinion." Here, in contrast, plaintiffs clearly seek documents and testimony regarding Mr. Sette-Ducati's professional "analysis of Cisco's true financial condition." <u>See</u> Plaintiffs' Memorandum at 1.

### C. Plaintiffs Cannot Demonstrate Substantial Need for MFS's Expert Work Product.

Because Rule 45(c)(3)(B)(ii) applies, plaintiffs must show substantial need in order to obtain MFS's expert work product. <u>See</u> <u>Thompson</u>, <u>supra</u>, 1995 WL 752422 at *4 (holding that movant "must show a substantial need for [third party expert's] testimony and that they cannot obtain comparable testimony without undue hardship"). Plaintiffs have not made and cannot make the required showing.

Plaintiffs have been provided with communications between Cisco and MFS – from the notes that were taken when Cisco representatives were speaking, from Mr. Sette-Ducati's testimony, and from the largely cumulative portion of the recently produced research reports that

make reference to what Cisco people said. Plaintiffs can find another expert to opine on whatever it is that Mr. Sette-Ducati might earlier have concluded. MFS is not uniquely qualified to offer such opinions. See Schering Corp., supra, 1998 WL 552944 at *3 (expert not compelled to testify where "there [was] no reason why another willing expert could not perform the same exercise and arrive at his or her own" opinion). In fact, compulsion of investment advisers such as MFS to produce their expert work product raises serious concerns. As explained in In re Application of J.A. Frates, Robert E. Merrick and Charles H. Holmes, No. M8-85, 1985 WL 27523 (S.D.N.Y. Sept. 25, 1985), where defendant Pantry Pride sought expert discovery from a third party regarding the value of Revlon stock:

> The district courts have repeatedly resisted efforts to utilize the liberal federal discovery rules for the purpose of gaining access to proprietary, confidential business information from third parties who have no interest in the litigation . . . To the extent that expert information about the value of Revlon stock in recent years is relevant to Pantry Pride in its defense against Revlon's charges of securities laws violations, Pantry Pride cannot expect to get a free ride at petitioners' expense.

Id. Here, plaintiffs seek to use MFS's expert analysis for their own ends—in their words, "as an assessment of the plausibility" of Cisco's statements. See Letter from Lucas Olts dated July 15, 2005, Simpson Jones Aff. at Ex 7.[4] This plaintiffs should not be permitted to do. As the court warned in In re Subpoenas Duces Tecum to Lehman Bros. Kuhn Loeb, Inc., No. M8-85, 1983 U.S. Dist. LEXIS 11752 (S.D.N.Y. Nov. 14, 1983):

> . . . allowing plaintiffs in actions concerning stock in publicly held corporations to obtain the investment banking world's expert work product without cost would have serious ramifications. Expert

---

[4] Plaintiffs also insist that Mr. Sette-Ducati is a "percipient witness' whose analysis should be made available to them. Plaintiffs' Memorandum at 5, 7, 10. In so arguing, plaintiffs attempt to conflate the witness's perception of facts (about which they have had ample opportunity to inquire at deposition) with his expert analysis, opinions and conclusions (to which they are not entitled). Plaintiffs should not be allowed to mask their actual aim – obtaining MFS's research analysis about the veracity of Cisco's statements concerning its financial condition – in terminology that merely begs the question presented.

> matter of this sort is prepared in the day-to-day business of investment banking firms. Such matters would routinely become the subject of extensive discovery in every action concerning stock in publicly held corporations, thus seriously undermining those investment banking firms' unique practices and their ongoing relationships with clients, as well as adding unnecessary and considerable delay and expense to the already overburdened discovery practice in those matters. [5]

Id. at *4. If plaintiffs can obtain MFS's expert work product, then MFS and every other producer of investment research can be drawn into every securities litigation, at great cost to them and their clients. MFS should not be required to enter the litigation support business by overreaching plaintiffs. Plaintiffs are free to seek experts who are willing to assist them, rather than compel MFS to exceed its already substantial efforts to comply with plaintiffs' subpoena. Plaintiffs have made no showing of substantial need to justify their demand for MFS's expert work product, regardless of its relevance to their case against Cisco.

## IV.  CONCLUSION

For all of these reasons, plaintiffs' motion to compel should be denied.

MASSACHUSETTS FINANCIAL SERVICES
INVESTMENT MANAGEMENT

By its attorneys,

/s/ Sharon Simpson Jones
William H. Paine  (BBO # 550506)
Sharon Simpson Jones  (BBO # 640851)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Dated: July 21, 2005

---

[5] Needless to say, plaintiffs' offer to preserve the confidentiality of MFS's work product under their existing protective order does not address MFS's chief concerns—namely, the burden imposed by plaintiffs' request, and the concern that MFS and its employees will repeatedly be drawn into similar expensive and time-consuming diversions despite the rule to the contrary.

## Certificate of Service

I, Sharon Simpson Jones, hereby certify that on this 21st day of July, 2005 I caused the foregoing Memorandum of Third Party Massachusetts Financial Services Investment Management in Opposition to Plaintiffs' Motion to Compel Production of Expert Work Product be served upon the following parties:

| | |
|---|---|
| Christopher N. Souris<br>Krakow & Souris LLC<br>225 Friend Street<br>Boston, MA 02114 | [ ] U.S. Mail<br>[ ] Fax (617) 723-8443<br>[X] Overnight Delivery<br>[ ] Messenger Delivery |
| Lesley Weaver<br>Lerach Coughlin Stoia Geller Rudman<br>  & Robbins LLP<br>100 Pine Street, Suite 2600<br>San Francisco, CA 94111 | [ ] U.S. Mail<br>[ ] Fax (415) 288-4534<br>[X] Overnight Delivery<br>[ ] Messenger Delivery |
| William S. Lerach<br>Lerach Coughlin Stoia Geller Rudman<br>  & Robbins LLP<br>401 B Street, Suite 1600<br>San Diego, CA 92101 | [ ] U.S. Mail<br>[ ] Fax (619) 231-7423<br>[X] Overnight Delivery<br>[ ] Messenger Delivery |
| Sandra Stein<br>Lerach Coughlin Stoia Geller Rudman<br>  & Robbins LLP<br>1845 Walnut Street, 25th Floor<br>Philadelphia, PA 19103 | [X] U.S. Mail<br>[ ] Fax (219) 988-9546<br>[ ] Overnight Delivery<br>[ ] Messenger Delivery |
| Fredric G. Levin<br>Levin Papantonio, Thomas, Mitchell,<br>  Echsner & Proctor, P.A.<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32501 | [X] U.S. Mail<br>[ ] Fax (850) 436-6084<br>[ ] Overnight Delivery<br>[ ] Messenger Delivery |
| Alice Jensen<br>Fenwick & West LLP<br>275 Battery Street, Suite 1500<br>San Francisco, CA 94111 | [ ] U.S. Mail<br>[ ] Fax (415) 281-1350<br>[X] Overnight Delivery<br>[ ] Messenger Delivery |
| Carol Lynn Thompson<br>Heller Ehrman LLP<br>333 Bush Street, Suite 3100<br>San Francisco, CA 94104-2878 | [X] U.S. Mail<br>[ ] Fax (415) 772-6268<br>[ ] Overnight Delivery<br>[ ] Messenger Delivery |

Norman J. Blears  
Heller Ehrman LLP  
275 Middlefield Road  
Menlo Park, CA 94025  

[X] U.S. Mail  
[ ] Fax (650) 324-0638  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

Theodore P. Senger  
PricewaterhouseCoopers LLP  
333 Market Street  
San Francisco, CA 94104  

[X] U.S. Mail  
[ ] Fax (415) 498-7135  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

Dan K. Webb  
Winston & Strawn LLP  
35 West Wacker Drive, Suite 4200  
Chicago, IL 60601-9703  

[X] U.S. Mail  
[ ] Fax (312) 558-5700  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

J. Nixon Daniel, III  
Beggs & Lane  
501 Commendencia Street  
P.O. Box 12950  
Pensacola, FL 32591  

[X] U.S. Mail  
[ ] Fax (850) 469-3330  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

Scot Bernstein  
Law Office of Scot Bernstein  
10510 Superfortress Avenue, Suite C  
Mather Field, CA 95655  

[X} U.S. Mail  
[ ] Fax (916) 933-55333  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

Darren J. Robbins  
Lerach Coughlin Stoia Geller Rudman  
 & Robbins LLP  
401 B. Street, Suite 1600  
San Diego, CA 92101-4297  

[X] U.S. Mail  
[ ] Fax (619) 231-7423  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

Timothy M. O'Brien  
Levin Papantonio , Thomas, Mitchell  
 Echsner & Proctor, P.A.  
316 South Baylen Street, Suite 600  
Pensacola, FL 32501  

[X] U.S. Mail  
[ ] Fax (617) 723-8443  
[ ] Overnight Delivery  
[ ] Messenger Delivery  

_/s/ Sharon Simpson Jones_  
Sharon Simpson Jones